UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL E. BOYD,<br><br>  Plaintiff,<br>  v.<br><br>GMAC MORTGAGE LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOES 1 to 100,<br><br>  Defendants. | Case No.: C 11-5018 PSG<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS; (2) DENYING PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER**<br><br>**(Re: Docket Nos. 9, 13)** |

Plaintiff Michael E. Boyd ("Boyd"), appearing *pro se*, applies for a temporary restraining order and simultaneously moves for a preliminary injunction to prevent Defendants GMAC Mortgage, LLC ("GMAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Does 1-100 (collectively "Defendants") from going forward with a nonjudicial foreclosure sale of his home. The sale is scheduled to take place on December 5, 2011.[1] Defendants concurrently move to dismiss Boyd's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Each side opposes the

---

[1] On November 29, 2011, the parties appeared for case management conference. Defendants' counsel represented that Defendants would delay the foreclosure sale, scheduled for December 5, 2011, until the court issued its ruling on Boyd's motion for preliminary injunction.

1

Case No.: C 11-5018 PSG
ORDER

other's motion. The court has considered the moving and responding papers for both motions and finds this decision appropriate for determination without oral argument.[2] For the reasons discussed below, Defendants' motion to dismiss will be granted with leave to amend, and Boyd's motion for preliminary injunction will be denied.

## I. BACKGROUND

At the heart of this dispute is Boyd's desire to quiet title to two properties, his residence located at 5439 Soquel Drive, Soquel, CA 95073 ("the Soquel property") and 1090-1092 Lakebird Drive, Sunnyvale, CA ("the Sunnyvale property"). According to Defendants, both of Boyd's properties are in default. Only the Soquel property is scheduled for foreclosure.

On October 11, 2011, Boyd filed the instant complaint against GMAC and MERS. The court reads Boyd's complaint as an action to quiet title to the properties and for injunctive and declaratory relief based upon allegations of unconscionability for the use of contracts of adhesion and failure to secure title to the subject properties.[3] On November 8, 2011, Boyd filed applications for a preliminary injunction or temporary restraining order to prevent the pending foreclosure sale. On November 9, 2011, Defendants responded to oppose Boyd's motions and filed their motion to dismiss. On November 16, 2011, Boyd filed his joint response to Defendants' motion to dismiss and reply to their opposition to the preliminary injunction motion.

According to the complaint, Boyd refinanced his loan[4] on the Sunnyvale property in December 2006 with Plaza Home Mortgage ("Plaza"). The loan was secured by the deed of trust

---

[2] *See* Civ. L.R. 7-1(b).

[3] The court extracts these allegations with some difficulty because Boyd's complaint does not set forth particular allegations as individual causes of action. To the extent that Boyd mentions in passing violations of his due process rights under the Constitution or other allegations, the court does not find these to be set forth with sufficient clarity to warrant consideration for the purpose of the pending motions.

[4] The court notes that Boyd's wife, Patricia L. Paramoure, although not a party to this action, is named and included in all relevant loan documents and on the deed of trust for both properties.

2
Case No.: C 11-5018 PSG
ORDER

on the Sunnyvale property, in which Plaza named MERS as the beneficiary.[5] On January 16, 2007, Washington Mutual FA ("WaMu") filed a full reconveyance of the deed of trust to Boyd as trustor.[6] Boyd alleges that this reconveyance did not name Defendants as the beneficiaries under the security instrument, and therefore left the property "unsecured."[7] On the Soquel property, Boyd similarly refinanced his loan with Plaza in January 2007, secured by a deed of trust on the Soquel property. On January 24, 2007, Plaza recorded the deed of trust and named MERS as the beneficiary.[8] On February 1, 2007, WaMu recorded a full reconveyance of the deed of trust to Boyd.[9] Although not alleged in the complaint, MERS, in its capacity as beneficiary, transferred its interest in the Sunnyvale and Soquel properties to GMAC in September 2011 and February 2011, respectively.[10] GMAC subsequently recorded a substitution of trustee on both properties, substituting ETS Services, LLC ("ETS") for the original trustee, First American Title.[11]

Beginning around April and May of 2007, Boyd began making mortgage payments for the loans on both properties to GMAC.[12] Boyd alleges that GMAC defrauded him in the amount of

---

[5] Docket No. 1 at 5:20-6:1 (Compl.); Docket No. 10, Ex. J (Def.'s Req. For Jud. Notice). The court takes judicial notice of Defendants' Exhibits A-N, filed in support of Defendants' Motion to Dismiss. *See* Docket Nos. 9, 10. The exhibits contain publicly-recorded and publicly-available documents that are "capable of accurate and ready determination" by verifying their accuracy with the Santa Cruz and Santa Clara County Records Offices. *See* Fed. R. Evid. 201(b). Moreover, Boyd concedes in his opposition brief that the authenticity of the documents offered by Defendants is "not in dispute" even though Boyd states that he does not concede to the contents of the documents. *See* Docket No. 24 at 5:6-11.

[6] Docket No. 1 at 6:3-9; Docket No. 20, Ex. K.

[7] Docket No. 1 at 6:3-9.

[8] *Id.* at 6:10-16; Docket No. 10, Ex. A.

[9] Docket No. 1 at 6:16-22; Docket No. 10, Ex. B.

[10] *See* Docket No. 9 at 4, 5 (Defs.' Mot. To Dismiss); Docket No. 10, Exs. C, L.

[11] *See* Docket No. 10, Exs. E, M. This substitution allowed ETS to record a notice of default on March 1, 2011 on the Soquel property, and a notice of default on September 14, 2011 on the Sunnyvale property. *See* Docket No. 9 at 4, 5.

[12] Docket No. 1 at 7:11-8:7.

3
Case No.: C 11-5018 PSG
ORDER

approximately $186,000 by charging and taking loan payments even though GMAC did not have valid title to the property.[13] Boyd explains that Defendants failed to record a substitution of trustee in 2007 or specifically name GMAC as a beneficiary to the full reconveyance.[14] Based on Defendants' purported lack of title to the properties, as well as legal action taken by the Federal Housing Finance Agency ("FHFA") against GMAC for reckless lending and unlawful foreclosure practices, Boyd further alleges that Defendants do not have lawful authority to carry out the pending foreclosures, and in particular the nonjudicial foreclosure sale on the Soquel property.[15]

Boyd also alleges that during the December 2006 and January 2007 refinancing of the two properties, MERS used "the same standard forms" which afforded Boyd "no opportunity to negotiate" the terms of the loan or interest rates and did not disclose MERS' relationship with GMAC or the "loan underwriting investor(s)."[16] Boyd argues that the standard forms were contracts of adhesion that MERS, the party of superior bargaining strength, presented to Boyd in a "take it or leave it manner," even though MERS was informed of Boyd's "inferior financial condition and credit history."[17]

In his motion for preliminary injunction or a temporary restraining order ("TRO") to prevent the December 5th foreclosure sale of the Soquel property, Boyd also alleges unconscionability and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* in Defendants' negotiations with Boyd over the court's mandatory

---

[13] *See id.* at 1:22-24, 5:13-18.

[14] *See id.* at 7:11-8:12; 10:13-16.

[15] *See id.* at 11:1-5, 12:7-13.

[16] *See id.* at 3:22-4:3.

[17] *See id.*

4

Case No.: C 11-5018 PSG
ORDER

Alternative Dispute Resolution ("ADR") process.[18] Boyd argues that Defendants provided the ADR stipulation form with knowledge of the pending foreclosure sale so that Boyd would agree to ADR, only to have the entire process mooted by the subsequent sale.[19] Based on the alleged UCL violations and unconscionability of Defendants' actions in the court process and in furnishing the refinance documents, as well as the alleged lack of authority to conduct the foreclosure sale, Boyd urges the court to enjoin the sale of the Soquel property until Boyd's claims can be litigated in full.

## II. MOTION TO DISMISS

### A.   Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[20] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[21] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged

---

[18] *See* Docket No. 15 at 10 (Pl.'s Memo. In Support of Mot. For Prelim. Inj.). According to Boyd, beginning on November 3, 2011, Defendants' counsel contacted him to confer regarding joint scheduling and ADR deadlines. Defendants suggested that Boyd agree to court-appointed mediation, with a deadline of 90 days after the conclusion of pleadings. The following day, Boyd discovered the notice of trustee's sale taped to the door of his Soquel residence. Boyd then stated that he would not stipulate to Defendants' ADR or other suggestions unless Defendants would stay the foreclosure sale. In the alternative, Boyd asked Defendants to agree to a mediation deadline of December 1st, before the scheduled sale. Defendants did not agree to stay the foreclosure sale or shift the ADR deadline until the case management conference, as noted above.

[19] *See id.* at 11.

[20] Fed. R. Civ. P. 8(a)(2).

[21] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[22] *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

5
Case No.: C 11-5018 PSG
ORDER

in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[23]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[24] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[25] However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[26] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[27]

A motion for more definite statement pursuant to Fed. R. Civ. P. 12(e) is appropriate when a pleading "is so vague or ambiguous that the [responding] party cannot reasonably prepare a response." "Whether to grant a Rule 12(e) motion is within the discretion of the trial court."[28] Rule 12(e) motions are generally disfavored by the courts given the liberal pleading requirements under the federal rules. A motion for more definite statement "should not be granted unless the defendant cannot frame a responsive pleading."[29]

---

[23] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[24] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[25] *See id.* at 1061.

[26] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[27] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003).

[28] *Babb v. Bridgestone/Firestone,* 861 F. Supp. 50, 52 (M.D. Tenn. 1993).

[29] *See Falamore, Inc. v. Edison Bros. Stores, Inc.,* 525 F. Supp. 940, 949 (E.D. Cal.1981) (citing *Boxall v. Sequoia Union High School District*, 464 F. Supp. 1104, 1114 (N.D. Cal.1979)).

6
Case No.: C 11-5018 PSG
ORDER

**B.     Analysis**

   *1. Allegedly Incomplete Reconveyance*

Boyd has alleged that he was the recipient trustor to whom WaMu reconveyed the Sunnyvale and Soquel property deeds of trust on January 16, 2007 and February 1, 2007, respectively. The record of reconveyance for each property documents that WaMu reconveyed in full each deed of trust to Boyd at that time.[30] The record further demonstrates, however, that these reconveyances were as to earlier loans and did not affect the loans resulting from the 2006 and 2007 refinances of the Sunnyvale and Soquel properties.[31] Those loans – the same loans on which Boyd has received the notice of defaults underlying the foreclosures at issue – were secured by two different deeds of trust, each filed prior to WaMu's recorded reconveyance.[32] The deeds of trust demonstrate that Plaza, as the lender, named Boyd as the trustor and MERS as the beneficiary of the security instrument.[33]

Although on a motion to dismiss the court takes Boyd's allegations in the complaint as true and construes them in the light most favorable to him,[34] the Court need not accept as true those allegations that represent unwarranted deductions of fact or constitute unreasonable inferences.[35] Here, the court cannot accept Boyd's allegations that he has unencumbered title to the properties because Defendants have presented the court with public records that demonstrate otherwise. The

---

[30] *See* Docket No. 10, Exs. B, K.

[31] The record demonstrates that the Sunnyvale property reconveyance was based on an earlier loan from 2001 with an instrument number 15647848; the Soquel property reconveyance was based on an earlier loan from 2004 with an instrument number 2004-00069441. *See id.* Exs. K, B.

[32] *See id.* Exs. J, A.

[33] *See id.*

[34] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[35] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

court therefore finds that Boyd fails to state a claim for quiet title on the grounds of the full reconveyance issued by WaMu.

### 2. *Unconscionability and Defendants' Authority to Initiate Foreclosure*

Boyd also alleges that Defendants have a pattern and practice of unconscionability regarding the deeds of trust on the properties signed in December 2006 and January 2007. Boyd alleges that MERS presented Boyd with standardized forms for both properties with knowledge of Boyd's "inferior financial condition and credit history" and without allowing Boyd opportunity to negotiate the terms of the loans with MERS.[36] Boyd challenges several aspects of the transactions at issue, including the type of loan Defendants offered to him, the terms of the loan including interest rates and repayment schedules, and the right to foreclose in the event of default.[37] Boyd also alleges that MERS did not disclose its relationship with GMAC, which action "should not be legal without signed consent" of the borrower so as to allow "ALL consumers to have privacy control, bargaining power, and disclosure in Mortgage Backed Securities."[38] Boyd thus argues that the payments made to GMAC were improper because "Plaintiff discovered that neither GMAC nor Fannie Mae owned his Note," which instead "was, and still is, owned by a mortgage backed security trust (MBST) which purchased Plaintiff's Note from neither GMAC nor Fannie Mae but from yet another purported owner of his Note."[39] Because MERS and GMAC cannot or have not "shown him [Boyd] the Note(s)" in question, Boyd argues that the chain of title is unproven and Defendants have no authority to foreclose. Boyd references Cal. Civ. Code § 2941(b)(1) in support

---

[36] *See* Docket No. 24 at 9 (Pl.'s Reply to Def.'s Mot. Dismiss and Def's Opp'n to Pl.'s Mot. For Prelim. Injunc.).

[37] *See id.* at 10.

[38] *See id.*

[39] *See id.* at 11.

8

Case No.: C 11-5018 PSG
ORDER

of this argument, alleging that MERS failed to record a "substitution of trustee" within the statutory time limit.[40]

Taking the allegations in the complaint to be true, the court finds that Boyd nevertheless fails to state a claim based on Defendants' alleged lack of ownership of the mortgage notes. California courts have rejected Boyd's line of reasoning,[41] and district courts in this district have agreed.[42] Moreover, the provisions of the Sunnyvale and Soquel property deeds of trust expressly grant MERS authority to act as beneficiary under the deed of trust and to "exercise any or all of those interests, including but not limited to, the right to foreclose and sell the property."[43] Boyd's argument that MERS cannot initiate foreclosure because it failed to record a "substitution of trustee" pursuant to Cal. Civ. Code § 2941(b)(1) thus fails.

With respect to Boyd's claims of unconscionability in Defendants' provision of the standard loan forms, Boyd fails to allege any facts beyond citing to the language of the forms used and stating in a conclusory fashion that the forms were presented "in a take it or leave it" manner. Boyd does not provide even an indication of how the terms of the loans were substantively unfair and one-sided, or how provision of the loan documents was oppressive or laden with hidden

---

[40] *See id.* at 13.

[41] *See Gomes v. Countrywide Home Loans Inc.*, 192 Cal. App. 4th 1149, 1157-58 (2011) (holding that plaintiff agreed in the deed of trust that MERS is authorized to initiate a foreclosure proceeding), *cert denied.* 80 U.S.L.W. 3097, 2011 Wl 3608736 (U.S. Oct. 11, 2011).

[42] *See, e.g., Benham v. Aurora Loan Servs.*, No. C-09-2059 SC, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (noting courts in this district have "summarily rejected" the argument that MERS loses its power of sale when the original promissory note is assigned to a trust pool, and further noting that MERS had assigned its interest under the deed of trust to the foreclosing party); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177,1186, 1189 (N.D. Cal. 2009) (holding that there is no requirement under California law for the production of an original promissory note prior to initiation of a nonjudicial foreclosure and noting that courts have upheld MERS' authority to initiate foreclosure when granted power of sale in the deed of trust); *Kurek v. America's Wholesale Lender*, No. C 10-2155 BZ, 2011 WL 3240482, at *1 (N.D. Cal. July 28, 2011) ("Plaintiff's position that MERS has no standing to initiate foreclosures … is incorrect since … Plaintiff's Deed of Trust authorized MERS to act as a beneficiary as well as initiate any foreclosure proceedings.")

[43] *See* Docket No. 10, Exs. A at 3, J at 3.

9
Case No.: C 11-5018 PSG
ORDER

surprise.[44] Boyd argues that the "surprise" came by receipt of the recent Notice of Trustee's Sale, but does not allege any facts to support a finding that the manner in which Defendants proffered the loan documents gave Boyd no choice but to adhere to the documents or reject them. In addition, the court notes that Boyd's allegation of unconscionability are likely time-barred with respect to the loan documents.[45]

In sum, Boyd's arguments that Defendants' actions were unconscionable and/or that Defendants are not authorized to foreclose – either because the note and mortgage became "separated" by MERS failure to file a substitution of trustee, or because MERS and GMAC have not complied with Boyd's "show me the note" demands – lack any basis in the facts alleged. The court therefore finds that Boyd's remaining claims or causes of action fail to state a claim for relief under the applicable laws.[46]

---

[44] *See Ting v. AT&T*, 319 F.3d 1126, 1148-49 (9th Cir. 2003) (explaining that a contract or clause is unenforceable under California law if proven to be both procedurally and substantively unconscionable).

[45] The signing dates on the Sunnyvale and Soquel property were December 22, 2006, and January 16, 2007, respectively. Under Cal. Civ. Code § 337, the statute-of-limitations on a claim arising under contract or liability founded upon an instrument in writing is four years. Boyd filed this lawsuit on October 11, 2011. Although Boyd argues that he raised his "show me the note" argument to GMAC's Loss Mitigation Department in November 2010 – still technically with in the statute of limitations – Boyd offers no authority to suggest that this action alone would have tolled the statute of limitations.

[46] As noted earlier, Boyd intersperses his moving and responding papers with several references to other, unstated "causes of action" that are never alleged or set forth properly in the complaint, *i.e.*, violations of California's UCL, and suggestions of constitutional due process violations. While Boyd may re-allege these claims in proper pleading form, *see* Fed. R. Civ. P. 10(b), the court will not address them here because these vague references are not properly before the court on Defendants' motion to dismiss.

10
Case No.: C 11-5018 PSG
ORDER

# III. MOTION FOR PRELIMINARY INJUNCTION / TEMPORARY RESTRAINING ORDER

## A. Legal Standard

The issuance of a preliminary injunction is committed to the discretion of the district court.[47] A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[48] "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"[49] In some cases, the court may grant preliminary injunctive relief based upon a showing that there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," so long as the plaintiff also satisfies the second and fourth *Winter* factors.[50] The standard for issuing a temporary restraining order is identical to the legal standard for issuing a preliminary injunction.[51]

## B. Analysis

Insofar as Boyd's motion for preliminary injunction or TRO raises the same issues as his complaint, Boyd has not demonstrated a likelihood of success on the merits or even serious questions going to the merits, because Boyd has failed to state a claim for relief under Fed. R. Civ. P. 8. It is not enough that Boyd can demonstrate irreparable harm if the foreclosure sale is allowed

---

[47] *See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

[48] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[49] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

[50] *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

[51] *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

to proceed.[52] Under the high bar for preliminary injunction set by *Winter*, all four factors must weigh in Boyd's favor in order to establish clear entitlement to preliminary injunctive relief.

The additional claims that Boyd sets forth in his motion for preliminary injunction – specifically unfair business practices under California's UCL and a claim that Defendants' engagement in the court's ADR conferral process was unconscionable – are not set out in the complaint and do not establish serious questions going to the merits of Boyd's case. Defendants' offer to attend mediation by stipulation, rather than require an ADR phone conference to discuss the ADR options, is not in and of itself suspicious. Boyd's unconscionability and unfair business practice arguments hinge on the single allegation that Defendants offered the stipulation already knowing the trustee sale had been scheduled. Boyd implies that if he signed the stipulation for mediation after the scheduled sale, it would "foreclose Plaintiffs' rights to equitable relief in the Court, mooting the need for the ADR process altogether."[53]

Boyd ignores, however, the fact that the ADR selection would have no impact on his pending application for TRO or preliminary injunction, which was scheduled for determination by the court regardless of the type or timing of mediation selected. On this basis alone, Boyd cannot demonstrate that he is likely to suffer irreparable harm in the absence of preliminary relief. The irreparable harm may be likely regardless of the mediation schedule. On the merits, Boyd offers no support for his argument that a party's refusal to adjust the ADR schedule notwithstanding a pending foreclosure constitutes procedurally and substantively unconscionable bargaining practices, and the court knows of none.

For these reasons, Boyd is not entitled to injunctive relief.

---

[52] *See Mesde v. Am. Brokers Conduit*, No. C 09-2418 JF (RS), 2009 WL 1883706, at *2 (N.D. Cal. June 30, 2009) (citing *Sundance Land Corp. v. Cmnty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988)).

[53] *See* Docket No. 15 at 11.

12
Case No.: C 11-5018 PSG
ORDER

## IV. CONCLUSION

Defendants' motion to dismiss is GRANTED with leave to amend. Any amended complaint shall be filed no later than Tuesday, December 27, 2011. Boyd's motion for preliminary injunction and temporary restraining order is DENIED.

Dated: December 5, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

13

Case No.: C 11-5018 PSG
ORDER